51 CCPA

**Application of Kiyoshi KOMINATO.**

**Patent Appeal No. 7149.**

United States Court of Customs and Patent Appeals.
May 14, 1964.

Edmund M. Squire, Abraham J. Nydick, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

This appeal is from a decision of the Board of Appeals sustaining the examiner's rejection of claims 6–11 and 14–16 of appellant's patent application.[1] All of the claims were rejected as being "based on an obscure disclosure," while various of the claims were additionally rejected "as too broad, indefinite and inaccurate." It appears from the examiner's answer, the board's opinion, and the brief of the solicitor, that the real position of the Patent Office is that appellant's application is simply incomprehensible.

Our studies indicate that appellant's invention is concerned with a method for preparing what is termed a series of new prosthetic groups and coenzymes. The new compounds appear to have a thiamamidine nucleus as a central component, and two groups, $R_1$ and $R_2$, as side components. $R_1$ and $R_2$ are extracted from plant or animal materials. All of the claims except claim 14 are directed to the method of preparing a coenzyme. Claim 14 is directed to a coenzyme of the formula there set forth. Claim 6 is representative of the method claims and reads as follows:

"A method of preparing coenzymes which comprises maturing a substrate solution including thiamamidine, at least one compound selected from the group consisting of peptides, polypeptides, amino acids and S-glycosides of allyl-mercaptans and at least one compound selected from the group consisting of nucleic acids and their derivatives, in the presence of an enzyme derived from said substrate solution and isolating the biosynthesized coenzyme from the matured solution."

While on its face claim 6 appears somewhat ambiguous, we need not concern ourselves with the adequacy of this or the other claims, for we agree with the Patent Office that the specification does not conform to the standards set forth in 35 U.S.C. § 112, the first paragraph of which provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same * * *."

As pointed out in the examiner's Answer:

"It is noted that where the disclosure is obscure in its language, it is thus rendered insufficient as to the broadest interpretation of the claims regardless whether it is possible to extract from the disclosure a specific embodiment which falls within the scope of the claims. The claims must be properly supported by a clear disclosure which is commensurate with the scope of the claims."

The Board of Appeals, after considering details of the specification, concluded:

"* * * We believe that there has been a failure in the instant application to disclose the invention in such full, clear and exact language [as] to enable one with ordi-

1. Serial No. 634,145, filed January 15, 1957, for "METHOD OF PREPARING A SERIES OF PROSTHETIC GROUPS AND CO-ENZYMES OF NEW REDOX-ENZYME WHICH ARE PRESENT IN PLANTS, ANIMALS, OR FOODS AND HAVE VITAMINE-LIKE ACTIVITY."

nary skill in the art to carry out the claimed process or produce the claimed product. * * * "

We note that appellant is a Japanese citizen, and perhaps some of the shortcomings in the disclosure may be attributable to language difficulties. Giving full effect to this possibility and reading the specification as liberally as we may in view of the requirements of section 112, we nevertheless agree with the examiner and the board that the disclosure with respect to certain items of critical importance to appellant's invention is at best doubtful and, at times, unintelligible.

Thus, under the heading "Sources of $R_1$ and $R_2$" appellant states:

" * * * If the structure of $R_1$ is more complicate [sic] than that of tripeptide, the synthesis of $R_1$ is so difficult to complete in practice that it is obliged to be taken by the biosynthetic processes with enzymes, yeast, fungi, and etc. Therefore it is profitable in practice to prepare the coenzymes by the combined [sic] method of synthesis and biosynthesis.

"The solution abundantly stored with $R_1$ and $R_2$ (the substrate) is extracted from the plant or animal materials and sometimes is enriched by adding amino acids, sugars, of [or?] other raw materials. In the case of Scordinin B, for example, glutamyl-homocystein, allyl-thioglucoside, fructose, niacinamide, ribonucleotides, cozymase I, or beer yeast are added to the extracts from garlic for enrichment of concentration of $R_1$ and $R_2$. The coenzymes have been biosynthesized in the maturing solutions consisted [?] of synthesized thiamamidine, and the substrate by the action of enzyme which was extracted from the same materials as those of the substrates."

We note that this passage refers to the substrate, the coenzymes, the "raw materials," the "maturing solutions," etc., all of which are important items in appellant's claimed process. But we have searched the specification in vain for an indication of the meaning and relationship of the words in this particular passage. For example, appellant refers to enrichment of the substrate, apparently by adding "raw materials." There is no indication, however, of what these particular "raw materials" are. Throughout the specification various raw materials are mentioned. At one point, the specification speaks of raw materials in this uncertain context:

"It has been supposed that the substances with thiamamidine in their structures may be present widely in plants or animals, having the properties of a prosthetic group or coenzyme and the important actions on the growth. Therefore a series of the prosthetic groups and coenzymes has been investigated widely in plants or in animals, and isolated as crystals from the following materials. From garlic, onion, Japanese onion, eel, Shiitake (Cortinelus), capsicum, beer yeast, honey, rice-embryo-bud, milk, lever, meat, tea and laver [later?] a series of coenzymes has been isolated and from the brewed [?] such as Shoyu (soy) the prosthetic groups and from the nonsaponified substances of fats and oils, $R_1$ containing fatty acids in their structure have been obtained respectively.

"A series of the coenzymes obtained from various materials is probably to be [sic] a new vitamine. The following experimental results on garlic is [sic] considered to give proof on the inventor's conclusion that the thiamamidine derivatives obtained from plant or animal materials are a kind of coenzymes."

It would serve no useful purpose to discuss the many similar defects in the specification. Suffice it to say that we believe the specification is the very antithesis of what is meant in section 112 by "a written description of the invention, and of the manner and process of

making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains" to make and use it. This also appears to have been the basic problem of the examiner and the board in dealing with this application. Their technical backgrounds and skills make it likely that, had the specification contained a disclosure of comprehensible subject matter, either the examiner or the members of the board would have found it. The fact that they were unable to do so further persuades us that the specification would not enable a person skilled in this art either to practice the claimed process or to produce the claimed new coenzymes. Failing in this respect, the specification is legally insufficient under section 112.

The appealed decision is accordingly affirmed.

Affirmed.